**REDD IRON, INC., Plaintiff–Appellee,**

**v.**

**INTERNATIONAL SALES AND SERVICE CORPORATION, d/b/a Commercial Building Services, Inc., and ALSCO, Inc., d/b/a Steiner Corporation, Defendants–Appellants.**

**No. 08CA0025.**

Colorado Court of Appeals,
Div. V.

Dec. 24, 2008.

Bloom Murr & Accomazzo, P.C., Joseph A. Murr, Daniel R. Delaney, Denver, CO, for Plaintiff–Appellee.

Benjamin, Bain & Howard, LLC, Alvin M. Cohen, Greenwood Village, CO, for Defendants–Appellants.

Opinion by Judge VOGT.

Defendants, International Sales and Service Corporation, d/b/a Commercial Building Services, Inc. (CBS), and ALSCO, Inc., d/b/a Steiner Corporation (ALSCO), appeal the trial court's judgment in favor of plaintiff, Redd Iron, Inc., on Redd's claim of unjust enrichment. We vacate the judgment and remand with directions.

## I. Background

ALSCO owns real property in Denver. It retained CBS as the general contractor to construct improvements on the property. CBS subcontracted with Excel Metals, Inc. to supply and erect steel for the construction project. Excel, in turn, subcontracted with Redd to provide labor and supplies for a portion of the steel work. Redd performed its work but was not paid by Excel.

Redd then commenced this action, asserting claims against Excel, CBS, and ALSCO for breach of contact, unjust enrichment, foreclosure of a mechanics' lien, and an adjudication of the rights of all parties claiming an interest in ALSCO's property. Redd was unable to locate or personally serve Excel or its registered agent and therefore served Excel by mail pursuant to section 7–90–704(2), C.R.S.2008. Excel filed no response, and the trial court entered a default against it.

After CBS and ALSCO answered the complaint, Redd filed a "contested motion for

judgment on the pleadings," asserting that the facts stated in the complaint and the answer established its right to recover on its unjust enrichment claim. Shortly thereafter, CBS and ALSCO moved for summary judgment on all of Redd's claims, and the parties submitted affidavits supporting and opposing summary judgment. As to the unjust enrichment claim, CBS and ALSCO took the position that, under *DCB Construction Co., Inc. v. Central City Development Co.,* 965 P.2d 115 (Colo.1998) *(DCB),* they could not have been "unjustly" enriched by Redd's services because they had engaged in no improper conduct. Redd argued that *DCB* was inapplicable and that defendants were liable because they received a benefit at Redd's expense.

The trial court entered summary judgment for ALSCO and CBS on three of Redd's four claims. It concluded that Redd's claim to foreclose its mechanics' lien was untimely, that there was no contract between Redd and CBS or Redd and ALSCO that would support a claim for breach of contract, and that Redd had no interest in the property that would permit it to seek adjudication of rights to the property. Redd has not appealed from this ruling.

On the same day it entered summary judgment, the trial court issued the following order granting Redd's motion for judgment on the pleadings:

> The Court, having reviewed the Plaintiff's Complaint and Motion, and Defendants' Answer and response to the Motion, if any, and considering itself sufficiently advised, hereby grants Plaintiff's Motion and orders the following:
>
> *DCB* ... is not applicable in this case. Judgment is entered in favor of Redd Iron, Inc. against Defendants CBS and Alsco, jointly and severally in an amount to be determined.

The trial court subsequently entered judgment for Redd for $28,304 based on the parties' stipulation that that amount represented "the unpaid balance owed to Redd Iron for the work done for steel work which was fabricated for the Project."

## II. Analysis

ALSCO and CBS contend that the trial court erred in ruling that, as a matter of law, Redd was entitled to recovery on its unjust enrichment claim. We conclude that the judgment must be vacated and the case remanded to permit the court to consider whether, under the standards set forth below, Redd is entitled to recovery on this claim and to make findings explaining the basis for its determination.

### A. Standard of Review

█ In considering a motion for judgment on the pleadings pursuant to C.R.C.P. 12(c), the trial court must construe the allegations in the pleadings strictly against the movant, must consider the allegations of the opposing parties' pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings. *Connecticut General Life Ins. Co. v. A.A.A. Waterproofing, Inc.,* 911 P.2d 684, 687 (Colo.App.1995), *aff'd sub nom. Constitution Associates v. New Hampshire Ins. Co.,* 930 P.2d 556 (Colo. 1996); *see City & County of Denver v. Qwest Corp.,* 18 P.3d 748, 754 (Colo.2001) (by granting plaintiffs' motion for judgment on pleadings, "the district court necessarily determined, in light of the controlling law and undisputed facts, that the matter could finally be resolved at that stage"). Our review of a trial court's determination of such a motion is de novo. *Connecticut General Life Ins. Co.,* 911 P.2d at 687.

C.R.C.P. 12(c) states that if matters outside the pleadings are presented on a motion for judgment on the pleadings "and not excluded by the court," the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Here, when the trial court ruled on Redd's motion for judgment on the pleadings, it had before it affidavits submitted in connection with the pending summary judgment motion filed by ALSCO and CBS. The court did not expressly exclude those affidavits, and we cannot determine whether the court in fact considered

them in entering judgment for Redd. However, even if Redd's motion is treated as one for summary judgment under C.R.C.P. 56, our analysis remains the same. Entry of judgment was proper under that rule only if the material facts were undisputed and Redd was entitled to judgment as a matter of law. *See* C.R.C.P. 56(c). Our review remains de novo. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251, 1256 (Colo.1995).

### B. Unjust Enrichment

#### 1. General Principles

Unjust enrichment is a form of quasi-contract or contract implied in law. The test for recovery under an unjust enrichment theory, as stated by the Colorado Supreme Court, requires a showing that: "(1) at plaintiff's expense, (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Robinson v. Colorado State Lottery Division*, 179 P.3d 998, 1007 (Colo.2008); *DCB*, 965 P.2d at 119–20.

If the elements of unjust enrichment are established, the party who has received the benefit is ordinarily required to make restitution in the amount of enrichment received. That amount is often, but not always, coextensive with the other party's loss. Where the amount of the recovery may reasonably be measured in different ways, the choice is within the discretion of the trial court. *See Engel v. Engel*, 902 P.2d 442, 445 (Colo.App.1995); *W.H. Woolley & Co. v. Bear Creek Manors*, 735 P.2d 910, 912 (Colo.App. 1986); Restatement (First) of Restitution § 1 cmts. a, d (1937).

Whether a party is entitled to recovery on a theory of unjust enrichment requires a trial court to "engage in a highly fact-intensive inquiry," *Dudding v. Norton Frickey & Associates*, 11 P.3d 441, 445 (Colo. 2000), and to "make extensive factual findings to determine whether a party has been unjustly enriched." *Lewis v. Lewis*, 189 P.3d 1134, 1140 (Colo.2008). Where a ruling on unjust enrichment is based on facts developed at trial, an appellate court affords deference to the trial court's discretion to fashion equitable remedies, and it reviews for abuse of discretion; nevertheless, whether the trial court has applied the appropriate test to determine the existence of unjust enrichment is reviewed de novo on appeal. *Id.* at 1140–41.

It is the third prong of the unjust enrichment test—namely, whether the enrichment of the defendant was "unjust"—that "creates difficult questions for trial courts." *Id.* at 1142; *see DCB*, 965 P.2d at 120 ("The notion of what is or is not 'unjust' is an inherently malleable and unpredictable standard."). Because the third prong of the unjust enrichment test is the focus of the dispute in this case, we turn our analysis to the standards governing that determination.

#### 2. Standards for Determining Whether Enrichment is "Unjust"

In *DCB*, a contractor who had been hired by a commercial tenant to remodel its premises brought an unjust enrichment action against the landlord after the tenant became insolvent and could not pay for the work. After discussing unjust enrichment generally and the difficulties of determining what is unjust in a particular case, the supreme court concluded that it was "important to articulate a general rule, applicable in this context, that provides more stability and predictability than an ad hoc review." 965 P.2d at 120. The court continued:

> With this principle in mind, we begin our analysis with two basic propositions. First, there is the general rule that when an individual who is not the owner orders improvements on the owner's land and then fails to pay the contractor or supplier, "the owner is not liable to the contractor or supplier unless he agreed to pay them." 3 Dan B. Dobbs, *The Law of Remedies* § 12.20(3) at 473 (2d ed. 1993)....
>
> . . .
>
> Second, the Restatement of Restitution § 110 provides that "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely* because of the failure of

performance by the third person." Restatement of Restitution § 110 (1937)....

*Id.* at 121 (emphasis in original).

Applying those principles to the case before it, the court concluded that the landlord's mere ownership of the improved property was not enough to subject it to liability. It disapproved the portion of a case from this court, *Frank M. Hall & Co. v. Southwest Properties Venture,* 747 P.2d 688, 690–91 (Colo.App.1987), that would have permitted the tenant's unpaid contractor to recover from the landlord based solely on the fact that the landlord had given permission for the work and had taken an active role in its completion. *See DCB,* 965 P.2d at 122. Rather, the supreme court concluded: "[W]e hold that injustice in this context requires some type of improper, deceitful, or misleading conduct by the landlord." *Id.* Because there was no evidence that the landlord had engaged in such conduct, the tenant's contractor could not recover from the landlord on an unjust enrichment claim.

The rule announced in *DCB* was applied in *R.A.S. Builders, Inc. v. Euclid & Commonwealth Associates,* 965 P.2d 1242, 1244 (Colo. 1998), a case announced the same day as *DCB* and also involving a claim by a tenant's contractor against a landlord. There, the supreme court explained its rule as follows:

> In *DCB Construction,* we held that it is not enough that a tenant breached its contract to pay a contractor and that the landlord owns the property improved by the construction.... Instead, we concluded that the facts must also demonstrate an injustice such as fraud or coercion.... At a minimum, there must be some type of improper, misleading, or deceitful conduct by the owner. Otherwise, we adhere to the general rule that an owner is not liable for improvements made to his property for which he did not agree to pay.

*Id.* The supreme court also cited DCB in support of its statement in *Dudding,* 11 P.3d at 445—a case concerning the right of an attorney to recover in quantum meruit or unjust enrichment—that: "Whether injustice results often will turn on whether a party engaged in some type of wrongdoing."

Divisions of this court have reached differing conclusions regarding the applicability of *DCB's* "improper conduct" requirement in other contexts. *Compare Ameriquest Mortgage Co. v. Land Title Ins. Corp.,* —— P.3d ——, ——, 2007 WL 2128203 (Colo.App.2007) (*cert. granted* Aug. 4, 2008) (lender's failure to present evidence of wrongdoing by deed of trust beneficiary did not preclude lender's request for equitable subrogation on theory of unjust enrichment; division stated that it did "not read ... DCB as requiring a showing of wrongful conduct in every unjust enrichment case"), *with Ciccarelli v. Guaranty Bank,* 99 P.3d 85, 90 (Colo.App.2004) (relying on *DCB* in concluding that trial court misapplied third element of unjust enrichment claim where there was no evidence that defendant bank had acted in an improper or deceitful manner), *overruled in part on other grounds by Lewis,* 189 P.3d at 1141.

In *Lewis*—announced in 2008, ten years after *DCB* and shortly after the entry of the judgment at issue in this appeal—the supreme court addressed the scope of its holding in *DCB.*

*Lewis* involved a dispute among family members over the proceeds from the sale of a house. The supreme court concluded that, in such circumstances, it was necessary to consider the "mutual purpose" of the parties in determining the third prong of the unjust enrichment test. 189 P.3d at 1143. In so concluding, the court held that the "particularized analysis for the third prong of unjust enrichment" enunciated in *DCB* was limited to the landlord-tenant contractor context:

> [In *DCB* ] [w]e held that, in claims against a landlord, where there is no direct relationship between the landlord and the contractor creating a contract or quasi-contract and the landlord did not act fraudulently, the landlord is not unjustly enriched when he receives a benefit from the failed contract between a tenant and a party working at the tenant's behest.... However, we were quick to note that the requirement of malfeasance is specific to a contractor's claim that the landlord was unjustly enriched and did not extend to all unjust enrichment circumstances.

*Id.* at 1142. According to the *Lewis* court, the rule set forth in *DCB* was "crafted ... '[b]ecause tenants frequently contract for improvements to leased property, [and therefore] the law must be sufficiently predictable so that the appropriate parties can adequately calculate and make adjustments for the risks they face.' " *Id.* (quoting DCB, 965 P.2d at 121). The court also noted that, in *Ameriquest,* the division had "correctly held that our DCB holding requiring malfeasance applies only in situations where a landlord receives a benefit from a failed contract between a tenant and a party working at the tenant's behest." *Lewis,* 189 P.3d at 1143 n. 5.

Thus, the supreme court has now made clear that the "particularized analysis" of *DCB,* which requires a showing of malfeasance in order to establish the third unjust enrichment prong, was intended to apply specifically to claims against a landlord by a party working at the tenant's behest, and that malfeasance need not invariably be shown to establish unjust enrichment.

However, that conclusion does not resolve the issue presented here—namely, what showing must a subcontractor make to establish that retention of benefits it provided to a property owner or a general contractor is "unjust" for purposes of the third prong of the unjust enrichment test. While the inquiry will depend to a large extent on the facts of the specific case, *see DCB,* 965 P.2d at 120, certain generally applicable principles can be gleaned from our supreme court's cases, from the authorities on which the supreme court has relied, and from cases from other jurisdictions that have addressed the issue.

3. Unjust Enrichment Claims by Subcontractors Against Property Owners and General Contractors

■ For the reasons set forth below, we conclude that a subcontractor seeking recovery from a property owner or a general contractor on an unjust enrichment theory must, to satisfy the third prong of the unjust enrichment test, establish some basis for finding injustice beyond the simple facts that (1) the owner or contractor benefitted from

services the subcontractor provided, and (2) the subcontractor was not paid for its work.

■ In so concluding, we note first that the "general rules" recognized by the supreme court in *DCB* and *R.A.S.*—i.e., that a property owner is generally not liable for improvements on his property for which he did not agree to pay, and that mere nonperformance of a contract by a third person is not enough to require the benefitted party to compensate the party suffering a loss because of such nonperformance—are not limited to the context of disputes between landlords and parties who contracted with their tenants. Restatement of Restitution § 110, cited in *DCB,* states: "A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." Neither the rule stated in that section nor the illustrations following it suggest that the rule is limited to any specific context.

Additionally, section 12.20(3) from Dobbs, *The Law of Remedies*—also cited in *DCB*—makes clear that the principle it discusses is applicable in situations involving claims by subcontractors against property owners:

> In the subcontractor setting, the rule insulates the owner from liability, even though the owner benefitted from a subcontractor's work, knows the work is being done, and wishes to have the improvement; this is so because the owner's agreement is to pay the general contractor, not the subcontractor. An additional reason is that if the owner has paid the general contractor the price due, the owner is not enriched in any legal sense; he will have received what was his due under the contract, no more.

*Id.* at 472–73.

Cases from other jurisdictions, adopting the position stated in Dobbs and in Restatement of Restitution § 110, have generally declined to allow unjust enrichment recovery by subcontractors against property owners or by sub-subcontractors against general contractors with whom they did not deal directly. *See Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland,* 342 Md. 169, 674 A.2d 534, 540–41 (Md.1996)

(collecting cases, and observing that: "The reported decisions involving claims by unpaid subcontractors against owners based on unjust enrichment do indeed almost uniformly deny relief, and ... these cases do not turn on whether the owner has fully paid the general contractor."); *see also Advance Leasing & Crane Co. v. Del E. Webb Corp.,* 117 Ariz. 451, 573 P.2d 525, 527 (Ct.App. 1977) ("[Supplier] assumed the risk that [subcontractor] would be able to pay. This risk cannot now be shifted to [the general contractor]."); *Season Comfort Corp. v. Ben A. Borenstein Co.,* 281 Ill.App.3d 648, 211 Ill. Dec. 682, 655 N.E.2d 1065, 1071 (1995) (secondary subcontractor could not recover from general contractor or property owner on unjust enrichment theory; subcontractor had not availed itself of mechanics' lien remedy, and it was not unjust to allow general contractor or property owner to retain benefits acquired); *Guldberg v. Greenfield,* 259 Iowa 873, 146 N.W.2d 298, 305–06 (Iowa 1966) (subcontractor who was not paid by general contractor was not entitled to recover from homeowners on unjust enrichment theory); *J.W. Thompson Co. v. Welles Products Corp.,* 243 Kan. 503, 758 P.2d 738, 745 (1988) (company that sold parts to a supplier had no unjust enrichment claim against contractor); *Pendleton v. Sard,* 297 A.2d 889, 895 (Me. 1972) ("[W]e conclude that under ordinary and usual circumstances the equities will not permit the supplier of labor and materials to obtain a personal judgment against the owner with whom he had no contractual dealings."); *Mon–Ray, Inc. v. Granite Re, Inc.,* 677 N.W.2d 434, 440 (Minn.Ct.App.2004) (subcontractors were not entitled, under unjust enrichment theory, to recover from project developer the funds that were forfeited by bankrupt general contractor); *Insulation Contracting & Supply v. Kravco, Inc.,* 209 N.J.Super. 367, 507 A.2d 754, 760 (Ct.App. Div.1986) (sub-subcontractors had no unjust enrichment claim against general contractor); *see generally* J.R. Kemper, Annotation, *Building and Construction Contracts: Right of Subcontractor Who Has Dealt Only with Primary Contractor to Recover Against Property Owner in Quasi Contract,* 62 A.L.R.3d 288 (1975 & 2008 cum. supp.).

We acknowledge that some of the cases discussed above have cited the subcontractor's failure to pursue other available legal remedies, such as foreclosure of a mechanics' lien, as one basis for holding that unjust enrichment relief was unavailable. In our view, this rationale would not alone preclude recovery on an unjust enrichment claim under Colorado law. *See* § 38–22–124, C.R.S. 2008 ("No remedy given in this article [the general mechanics' lien law] shall be construed as preventing any person from enforcing any other remedy which he otherwise would have had, except as otherwise provided in this article."); *DCB,* 965 P.2d at 118 n. 2 ("By statute and case law, contractors and others may still pursue any other available remedies [in addition to mechanics' lien remedies], such as breach of contract or unjust enrichment."); *Frank M. Hall & Co.,* 747 P.2d at 690. Therefore, we do not agree with ALSCO's and CBS's argument that allowing unjust enrichment recovery after Redd let its lien rights expire would eviscerate the procedural requirements of the mechanics' lien law.

Nevertheless, we conclude that the broader principle recognized in the cases and the authorities cited above is consistent with the "general rule" recognized by the Colorado Supreme Court in *R.A.S.* and *DCB*— namely, that property owners are ordinarily not liable to unpaid subcontractors on an unjust enrichment claim merely because they benefitted from the services provided. We do not read *Lewis* to hold that the supreme court would depart from this general rule in cases involving unjust enrichment claims by subcontractors.

#### C. Application

Turning to the case before us, we first note that the trial court did not err in concluding that the "improper conduct" requirement of *DCB* was inapplicable here. It does not follow from this, however, that Redd was entitled to judgment as a matter of law on its unjust enrichment claim.

Redd was required to prove all three elements of that claim, as well as the value of the benefit it conferred. *See DCB,* 965 P.2d at 119–20; *Engel,* 902 P.2d at 445. As to the

first two elements, it appears undisputed that Redd performed services and that it was not paid the $28,304 that it claimed was owed to it. However, although CBS and ALSCO admitted in their answer that Redd had conferred a benefit on Excel, and that Excel "accepted the benefit under circumstances that would render it unjust for it not to pay" for the benefit, CBS and ALSCO did not admit that they themselves had been benefitted or that the value of any such benefit was $28,304.

Also, in his affidavit opposing summary judgment, Redd's president attested that discovery was "required to ascertain ... facts such as what payments [defendants] have made for materials and services furnished by Redd Iron, whether [defendants'] payments to Excel, if any, allegedly included payments for the work performed by Redd Iron, on what dates and to whom those payments were allegedly made, and the date of the last work performed, the last materials furnished, or the date of completion of the building or improvement on the property." Further, although CBS's president stated in his affidavit that "CBS paid to Excel all amounts which CBS owed to it," and "ALSCO paid to CBS all amounts which ALSCO owed to it," he also attested that Excel had "failed to properly complete its work and, indeed, abandoned the project."

In these circumstances, it cannot be said that the first two elements of Redd's unjust enrichment claim, and the value of any benefit conferred, have been established as a matter of law.

Further proceedings are also required to determine whether, even if the first two elements of the unjust enrichment claim are established, the circumstances make it "unjust" for ALSCO and CBS to retain any benefit they received. As discussed above, ALSCO's ownership of the property, and CBS's status as a general contractor who has been paid, do not alone make their retention of such benefit unjust. Nor does Excel's failure to pay Redd suffice, without more, to satisfy the third unjust enrichment prong. Although CBS's president has attested that all amounts owing were paid, we cannot determine as a matter of law that Redd will be unable to show that other circumstances would render defendants' retention of the benefits unjust. Such a determination requires a "highly fact-intensive inquiry," *Dudding*, 11 P.3d at 445, and that inquiry is within the province of the trial court, not this court.

Accordingly, we vacate the judgment in favor of Redd on its unjust enrichment claim and return the case to the trial court with directions to determine, under the standards set forth above and after consideration of such additional argument and evidence as the court may require, whether the elements of unjust enrichment have been established. The trial court is also to make findings of fact sufficient to explain the basis for its determination.

The judgment is vacated and the case is remanded for further proceedings in accordance with the views set forth here.

Judge RUSSEL and Judge GABRIEL concur.