Ann S. PLATT and James E. Platt Jr., Plaintiffs–Appellants and Cross–Appellees,

v.

ASPENWOOD CONDOMINIUM ASSOCI-ATION INC., a/k/a Upper Willows Condominium Association, Inc., Defendant–Appellee and Cross–Appellant.

No. 08CA0605.

Colorado Court of Appeals, Div. V.

May 14, 2009.

Rehearing Denied June 18, 2009.

Thomas Law Firm, P.C., Peter W. Thomas, Jr., John B. Rediker, Snowmass Village, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Oates, Knezevich, Gardenswartz & Kelly, P.C., Maria Morrow, Aspen, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge BOORAS.

In this dispute over the purchase and sale of real property, plaintiffs, Ann S. Platt and James E. Platt Jr. (the Platts), appeal the declaratory judgment and judgment on the pleadings entered in favor of defendant, Aspenwood Condominium Association Inc. (Aspenwood). Aspenwood cross-appeals the trial court's judgment determining that the lis pendens filed by the Platts was not a "spurious document" under subsection 38–35–109(3), C.R.S.2008. We affirm in part, reverse in part, and remand.

## I. Background

This dispute arises from the Platts' attempt to purchase a condominium unit in the Upper Willows Condominiums located in Snowmass, Colorado.

In 2004, Aspenwood proposed a renovation project that included creating and selling two new condominium units. In 2005, the unit owners of the Aspenwood Homeowners' Association unanimously voted to build and sell the two new units. The owners agreed that the new units would be offered for sale through a private auction to the Aspenwood unit owners first. The Platts are Aspenwood unit owners.

In April 2006, the Platts bid successfully on unit K–A, and entered into a purchase and sale contract (Contract) with Aspenwood for the unit.

In September 2006, Aspenwood sent a letter to its unit owners informing them that the amount of the special assessment was dependant on whether two-thirds of the unit owners voted to approve the contracts for the two new units. In November 2006, Aspenwood asked its unit owners to approve the Contract. Based on Aspenwood's interpretation of section 38–33.3–312, C.R.S.2008, and the Contract, Aspenwood believed that sixty-seven percent of the unit owners had to vote to approve the Contract. However, less than sixty-seven percent of the unit owners voted to approve the Contract.

The Platts filed a complaint, asserting claims for (1) specific performance of the Contract; (2) anticipatory breach of the Contract; (3) breach of the implied covenant of good faith and fair dealing; (4) fraud; and (5) negligent misrepresentation. They also filed and recorded a lis pendens pursuant to section 38–35–110, C.R.S.2008.

Aspenwood answered and counterclaimed, seeking a declaratory judgment and asserting a claim for slander of title. Pursuant to C.R.C.P. 105.1 and subsection 38–35–201(3), C.R.S.2008, Aspenwood moved for an order requiring the Platts to show cause why the lis pendens should not be declared spurious and invalid.

The trial court entered judgment in favor of Aspenwood as to all five of the Platts' claims and as to its counterclaim for declaratory judgment, and against Aspenwood on its claim for slander of title. It concluded that (1) because less than sixty-seven percent of the unit owners voted to ratify and confirm the Contract negotiated between the Platts and Aspenwood, the Contract was void, and (2) because the Contract was void, no actionable claims for breach of the implied covenant of good faith and fair dealing, fraud, or negligent misrepresentation could exist. The court further concluded that even though the Contract was void, the lis pendens, when filed and recorded, was not invalid as a spurious document.

## II. Section 38–33.3–312, C.R.S.2008

The Platts first contend that the trial court misinterpreted section 38–33.3–312. Specifically, they assert that the statute is ambiguous and that once the unit owners approved the sale of the two new condominium units, Aspenwood had the requisite authority to enter into the Contract, on behalf of its unit owners, without further attempts to obtain sixty-seven percent approval. We disagree.

■ Statutory interpretation is a question of law that we review de novo. *Wolf Creek Ski Corp. v. Bd. of County Comm'rs*, 170 P.3d 821, 825 (Colo.App.2007).

■ A statute should be interpreted to give effect to the General Assembly's intent, giving the words in the statute their plain and ordinary meanings. *Id.* A statute should be interpreted as a whole, giving effect to all of its parts. *Id.* We look at the context in which a statutory term appears, and the meaning of a word may be ascertained by reference to the meaning of words associated with it. *Id.* We "are not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language." *Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 218 (Colo.1996) (quoting *City & County of Denver v. Taylor*, 88 Colo. 89, 94–95, 292 P. 594, 596 (1930)).

■ When, as here, a statute is patterned after a model code, we may draw on available persuasive authority in reaching our decision. *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1212 (Colo.2008); *see also Giguere v. SJS Family Enterprises, Ltd.*, 155 P.3d 462, 467 (Colo.App.2006)("We accept the intent of the drafters of a uniform act as

the General Assembly's intent when it adopts that uniform act.").

In 1991, the General Assembly enacted the Colorado Common Interest Ownership Act, sections 38–33.3–101 to –319 (CCIOA), based on the Uniform Common Interest Ownership Act (1982)(Uniform Act). *Giguere*, 155 P.3d at 467. As originally enacted, section 38–33.3–312 mirrored section 3–112 of the Uniform Act. Ch. 283, sec. 1, 1991 Colo. Sess. Laws 1747 (effective July 1, 1992). The original text read: "An agreement to convey . . . must be evidenced by the execution of an agreement, or ratifications thereof, in the same manner as a deed, by the requisite number of unit owners." However, in 1998, language in subsection 38–33.3–312(3) was amended to its current form. Ch. 164, sec. 17, § 38–33.3–312(3), 1998 Colo. Sess. Laws 484 (effective July 1, 1998).

Section 38–33.3–312 currently provides:

(1) In a condominium or planned community, portions of the common elements may be conveyed . . . by the association if persons entitled to cast at least sixty-seven percent of the votes in the association . . . agree to that action. . . .

(3) An agreement to convey . . . common elements in a condominium or planned community . . . must be evidenced by the execution of an agreement, in the same manner as a deed, by the association. The agreement must specify a date after which the agreement will be void unless approved by the requisite percentage of owners. Any grant, conveyance, or deed executed by the association must be recorded in every county in which a portion of the common interest community is situated and is effective only upon recordation.

(4) The association, on behalf of the unit owners, may contract an interest in the common interest community pursuant to subsection (1) of this section, but the contract is not enforceable against the association until approved pursuant to subsections (1) and (2) of this section and executed and ratified pursuant to subsection (3) of this section. Thereafter, the association has all powers necessary and appropriate to effect the conveyance . . . including the power to execute deeds or other instruments.

(5) Unless in compliance with this section, any purported conveyance . . . of common elements . . . is void.

Here, as to subsections 38–33.3–312(1) and (3), the trial court concluded:

The statute requires 67% of [the unit owners] to approve any "agreement to convey" the common elements to the Platts in order for it to be valid. Subsections (1) and (3). "Agreement to convey" is defined in Subsection (3) as something that is not merely approved, but actually "executed," that is, signed by the agreeing parties.

Neither party disputes, nor do we, that subsection 38–33.3–312(1) requires that sixty-seven percent of the unit owners must agree to convey the two new units. Further, the court's conclusion is supported by comment 1 to the Uniform Act section 3–112, which provides that the "power given [to convey common elements] can be exercised only on agreement of unit owners" holding a requisite percentage of the votes in the association.

As to subsection 38–33.3–312(3), comment 2 of Uniform Act section 3–112 gives us guidance. It states:

[T]he agreement for sale . . . [must] be evidenced by the execution of an agreement in the same manner as a deed by the requisite majority of the unit owners. . . . The [ ] agreement signed by the unit owners is not the conveyance itself, but is rather a supporting document which shows that the association has full power to execute the actual instrument of conveyance.

We note that Uniform Act section 3–112 requires execution of such an agreement by the "requisite number of unit owners," whereas subsection 38–33.3–312(3) requires execution by "the association." Nonetheless, we conclude that if sixty-seven percent of the unit owners were to approve the sale of the two new units, then subsection 38–33.3–312(3) requires such approval be executed as a written agreement demonstrating that Aspenwood has authority to enter into contracts to sell the two new units.

Here, the trial court concluded that it was "not aware that, at the Annual Meetings in which general approval was given by the

[unit owners] for the construction and sale of the new units, that the [unit owners] signed anything to memorialize their decision." Nothing in the record shows that the unit owners executed any type of agreement approving the sale of the two units.

As to subsection 38–33.3–312(4), we are not persuaded by the Platts' contention that the "reference to ratification appears merely to be an overlooked vestige from an earlier version of Section 312 and is not intended to create any affirmative obligation on [the unit owners] to review and approve actual contracts for purchase and sale of common elements assuming the owners have already approved the conveyance by the requisite vote." Although the General Assembly removed the phrase "or ratifications thereof" in subsection 38–33.3–312(3) when it amended the statute in 1998, the phrase "executed and ratified pursuant to subsection (3)" in subsection 38–33.3–312(4) remained intact. Thus, we must give effect to that clause, if possible. *Allstate Ins. Co. v. Avis Rent–A–Car Sys., Inc.*, 947 P.2d 341, 345 (Colo.1997); *McLane W., Inc. v. Dep't of Revenue*, 126 P.3d 211, 218 (Colo.App.2005); *see also United States v. Blasius*, 397 F.2d 203, 207 n. 9 (2d Cir. 1968) ("There is a presumption against construing a statute as containing superfluous or meaningless words. . . .").

■ Reading subsections 38–33.3–312(3) and (4) together, we conclude that the "contract" referred to in subsection 38–33.3–312(4) must be ratified by the unit owners.

■ "Ratification" is defined as "the adoption and affirmance, either expressly or by implication, by one person of the prior act of another which did not bind him but which was done or professed to be done on his account, whereby the act is given effect as though originally authorized." *Hayutin v. Gibbons*, 139 Colo. 262, 268, 338 P.2d 1032, 1036 (1959); *see also Black's Law Dictionary* 1289 (8th ed. 2004)("Ratification" means "Adoption or enactment, esp. where the act is the last in a series of necessary steps or consents.").

■ To ratify an act, there must be two parties involved: the party who acts and the party who affirms the act. Restatement (Third) of Agency § 4.01 cmt. b (2006) ("The act of ratification consists of an externally observable manifestation of assent to be bound by the prior act of another person."). Subsection 38–33.3–312(4) allows an association to enter into a contract but then requires ratification for the contract to be enforceable. Here, Aspenwood could enter into the Contract with the Platts, but it could not also ratify the Contract. Therefore, the unit owners were required to ratify the Contract to render it enforceable.

The requirement of ratification by the unit owners is further supported by the following clauses in the Contract:

6. No Representation from Seller: Buyer acknowledges that: . . .

d. The Property does not currently exist as an [sic] condominium unit and will only become a unit upon approval of an amended and restated condominium declaration and map by not less than 2/3 of the current owners in the Project.

9. Conditions Precedent to Unit Interior Completion: Prior to the Closing, Buyer will be granted possession of the Property upon the written authorization of Seller. Such authorization is dependant upon all of the conditions having first been successfully completed to the satisfaction of the Seller, as follows:

a. not less than 2/3 of the owners of the units in the Upper Willows Condominiums approving this Contract as required by the provisions of the Colorado Common Interest Ownership Act for the sale of common space.

Thus, we agree with the trial court's conclusion that the Contract was required to be ratified by the unit owners to be enforceable.

■ However, we disagree with the trial court's conclusion that the failure to ratify the Contract by at least sixty-seven percent of the unit owners renders the contract void ab initio.

■ The general rule is that where a statute expressly forbids a party from entering into a contract until performance of a precedent act and imposes a penalty on such party for attempting to enter into a forbid-

den contract, the contract is void ab initio. *Benham v. Heyde,* 122 Colo. 233, 241, 221 P.2d 1078, 1082 (1950). However, under subsection 38–33.3–312(5), a "purported conveyance," not "the agreement to convey" or "the contract," is void for noncompliance with subsections 38–33.3–312(1)–(4).

▮ A conveyance is a transfer of title to property by deed. *Ford v. Summertree Lane Ltd. Liability Co.,* 56 P.3d 1206, 1208 (Colo.App.2002); *Stagecoach Property Owners Ass'n v. Young's Ranch,* 658 P.2d 1378, 1381 (Colo.App.1982) ("The term 'conveyance' connotes a deed whereby the title to land is transferred from one person to another which deed must be both delivered and accepted in order to accomplish the transfer of the interest in the land.").

Here, although the Platts entered into the Contract to purchase a new condominium unit, the unit was not conveyed to them. Thus, subsection 38–33.3–312(5) was not triggered.

Accordingly, we conclude that the Contract is not void under subsection 38–33.3–312(5); because the Contract was not ratified by the unit owners, it is unenforceable; and the Platts' specific performance claim cannot stand.

### III. The Platts' Other Contentions

The Platts next contend that the trial court erred by dismissing their claims for breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. We agree.

▮ In considering a motion for judgment on the pleadings, the trial court must construe the allegations of the pleadings strictly against the movant, must consider the allegations of the opposing party's pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings. *Redd Iron, Inc. v. Int'l Sales & Servs. Corp.,* 200 P.3d 1133, 1135 (Colo.App.2008). Entry of judgment on the pleadings is proper only if the material facts are undisputed and the movant is entitled to judgment as a matter of law. *Id.* Our review of an order

entering judgment on the pleadings is de novo. *Id.*

### A. Breach of the Implied Covenant of Good Faith and Fair Dealing

▮ Every contract in Colorado contains an implied duty of good faith and fair dealing. *City of Golden v. Parker,* 138 P.3d 285, 292 (Colo.2006). A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract. *Id.* Whether a party acted in good faith is a question of fact which must be determined on a case-by-case basis. *New Design Constr. Co. v. Hamon Contractors, Inc.,* 215 P.3d 1172, 1181, 2008 WL 2522306, *9 (Colo.App. No. 06CA2011, June 26, 2008). As relevant here, section 38–33.3–113, C.R.S.2008, further provides, "Every contract or duty governed by this article imposes an obligation of good faith in its performance or enforcement."

Subsection 38–33.3–312(4) provides that an association may enter into a contract and that "the contract" is not enforceable against the association until approved. Thus, we apply the good faith and fair dealing requirement in section 38–33.3–113 to the Contract here.

When Aspenwood and the Platts initially entered into the Contract, they both had a "justified expectation that the other will act in a reasonable manner in its performance." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1363 (Colo.App. 1994).

Here, the trial court disallowed the Platts' breach of implied covenant of good faith and fair dealing claim on the basis that "implicit in the [sic] any such claim is that there is a legal enforceable contract" and, because it concluded that the Contract was void under subsection 38–33.3–312(5), "there was never a legal contract to perform." However, we have concluded that subsection 38–33.3–312(5) pertains to conveyances and not to the Contract. Additionally, under section 38–33.3–113, Aspenwood had to act in good faith in performing its duty to submit the Contract for ratification to the unit owners.

The Platts alleged in their complaint that Aspenwood breached its implied duty of good

faith and fair dealing by "attempting to convince the [unit owners] that voting against the approval of the Contract was in [the unit owners'] best financial interest." They contend that Aspenwood sent a letter to the unit owners "to stress a potential minimum savings of $3,300 for the [unit owners] by choosing not to approve the Contract."

Aspenwood does not dispute that it sent a letter to the unit owners stating the following:

> There is an important consideration to the base final special assessment which is dependant upon whether or not the contracts for the two new units are approved or not approved by the [unit] owners. An affirmative 2/3 vote by the [unit] owners is required by the contracts for them to be valid. It appears that the current market values of these two new units are in excess of that which is stated in the contracts, and therefore if they are not approved and subsequently sold at market value, the planned final assessment will be for less.

> The assessments are planned as follows:

> Should the contracts for purchase and sales be approved, the planned assessment will be $17,800 per unit.

> Should the contracts for purchase and sales NOT be approved, the planned assessment will be $14,500 per unit.

However, Aspenwood asserts it "followed reasonable commercial practices when it provided [the unit owners] with information regarding both the benefits and risks of the transaction." Also, it contends that because the Contract was declared void under subsection 38–33.3–312(5), the Platts' claim cannot stand.

■ We have concluded that subsection 38–33.3–312(5) does not apply to the Contract. Further, for judgment on the pleadings purposes, a factual dispute exists as to whether Aspenwood acted in good faith when it sent the letter to the unit owners. Thus, judgment was not proper.

Accordingly, the trial court erred in dismissing the Platts' breach of implied covenant of good faith and fair dealing claim.

**B. Fraud and Negligent Misrepresentation**

We are also persuaded by the Platts' contention that the trial court erred by dismissing their claims for fraud and negligent misrepresentation.

■ To prevail on a claim for fraud, the Platts must prove that (1) Aspenwood made a fraudulent misrepresentation of a material fact; (2) the Platts relied on the negligent misrepresentation; (3) the Platts had the right to rely on, or were justified in relying on, the misrepresentation; and (4) their reliance resulted in damages. *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1382 (Colo. 1994).

■ To prevail on a claim for negligent misrepresentation, the Platts must prove that (1) Aspenwood supplied false information in a business transaction; (2) Aspenwood failed to exercise reasonable care or competence in obtaining or communicating that information; and (3) the Platts justifiably relied on the false information. *Campbell v. Summit Plaza Assocs.,* 192 P.3d 465, 477 (Colo.App.2008).

■ Here, the Platts alleged that Aspenwood represented that it was authorized to enter into a contract to sell unit K–A on behalf of its unit owners and that the Platts justifiably relied on those representations when they entered into the Contract. Aspenwood denied that "it misrepresented the CCIOA requirements to the Platts."

It is unclear whether the alleged misrepresentation was based on subsection 38–33.3–312(4)'s requirement that the unit owners also approve the Contract. The alleged misrepresentation could have been that Aspenwood failed to comply with the procedures in subsection 38–33.3–312(3) but represented to the Platts that it did so before entering into the Contract. Thus, for judgment on the pleadings purposes, a genuine issue of material fact exists as to the alleged misrepresentation made.

Accordingly, we conclude that the trial court erred by dismissing the Platts' fraud and negligent misrepresentation claims.

## IV. Cross–Appeal

Aspenwood contends the trial court erred by concluding that the lis pendens filed by the Platts was not spurious under subsection 38–35–109(3). We disagree.

The statute defining the elements of filing a spurious lien, subsection 38–35–109(3), provides in pertinent part:

> Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees.

██ A groundless document is one as to which a proponent can advance no rational argument based on evidence or law to support his or her claim of a lien. *Harris v. Hanson,* 821 P.2d 821, 824 (Colo.App.1991).

Here, the trial court concluded:

> [T]he Platts' claim regarding the interpretation of Section 38–33.3–312, while unsuccessful, was advanced in good faith. In briefs and oral arguments on that subject, the attorneys for both sides reminded the Court the issue presented was a matter of first impression in Colorado, and in fact, the Court did not find any law previously construing that statute. The Lis Pendens was not "groundless," and hence spurious, because the Platts were able to advance a rational argument, based upon facts and the law, in support of their claim.

> In short, while the Platts' claim for specific performance which formed the basis of the Lis Pendens has been effectively denied by the Court's recognition that [the] Contract which afforded the remedy of specific performance has terminated, the Platts advanced rational arguments in support of its continued existence, and they were not groundless or otherwise spurious. By ex-

tension, the Lis Pendens, while filed and recorded, was not a spurious document.

██ At the time of recording the lis pendens, section 38–33.3–312 had not been construed; thus, the Platts did not know or have reason to know that the trial court would later determine the Contract to be void under subsection 38–33.3–312(5). *Cf. Harris,* 821 P.2d at 824 (concluding the contract was groundless because at the time of recording it, plaintiff knew or had reason to know that it presented a false claim to purchase the property when he refused to close the transaction for the agreed upon purchase price).

Accordingly, we conclude that the trial court did not err by determining that the lis pendens was not spurious at the time it was filed.

## V. Appellate Attorney Fees and Costs

We reject Aspenwood's request for attorney fees and costs on appeal pursuant to C.A.R. 39.5 and subsection 38–33.3–123(1), C.R.S.2008.

██ We are not persuaded that subsection 38–33.3–123(1)(c) requires an award of attorney fees to Aspenwood. Subsection 38–33.3–123(1)(c) provides for recovery of attorney fees only in actions to "enforce or defend the provision of this article or of the declaration, bylaws, articles, or rules and regulations." Here, Aspenwood defended against the Platts' breach of contract action and sought a declaratory judgment that the Contract was void. Neither the Platts' claims nor Aspenwood's counterclaims were to enforce or defend the CCIOA; thus, the statute does not apply. *Colo. Homes, Ltd. v. Loerch–Wilson,* 43 P.3d 718, 723 (Colo.App. 2001) (concluding subsection 38–33.3–123(1) did not apply where plaintiffs' "primary purpose in asserting the tort claims was not to enforce the covenants contained in the declaration"). Further, Aspenwood has not prevailed on appeal. *Independence Institute v. Coffman,* 209 P.3d 1130, 1143 (Colo.App. 2008).

The judgment is reversed as to the Platts' breach of implied covenant of good faith and fair dealing, fraud, and misrepresentation claims, and the judgment is affirmed in all

other respects. The case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM and Judge BERNARD concur.