24CA1353 Barsim v Doremus 12-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1353
Pitkin County District Court No. 22CV30032
Honorable Christopher G. Seldin, Judge

Barsim LLC, a Colorado limited liability company; Glen Eagles Drive LTD., a Guernsey limited company; and Stonefield Properties LLC, a Delaware limited liability company,

Plaintiffs-Appellants,

v.

Andrew J. Doremus and Jeanne C. Doremus,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Moultrie and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

Ferguson Schindler Law Firm, P.C., Michelle K. Schindler, Ryan J. Dougherty, Aspen, Colorado, for Plaintiffs-Appellants

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Brad W. Schacht, Nicholas Gunther, Denver, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Plaintiffs, Barsim LLC, Glen Eagles Drive LTD., and Stonefield Properties LLC (collectively, the homeowners),[1] appeal the trial court's order denying the homeowners' request for injunctive relief or, in the alternative, request for damages against defendants, Andrew J. Doremus and Jeanne C. Doremus.  We affirm.

## I.    Background

¶ 2    We glean the following facts from the evidence presented at, and the trial court's findings following, a two-day bench trial.

### A.    Pitkin County Proceedings

¶ 3    The Doremuses wanted to split their property into two separate lots with plans to eventually build a home on the second lot.  They requested signatures from the homeowners — each of which owns a home adjacent to the Doremuses' property — to support the intended lot split.  The homeowners, individually, signed letters supporting the lot split and amendment to the plat map.  These letters were submitted to Pitkin County as part of the

---

[1] During trial court proceedings, the following persons testified as the authorized representatives and residents of these respective properties: (1) Julie and Steve Schlafer testified for Barsim; (2) Jeffrey and Valerie Montgomery testified for Glen Eagles Drive; and (3) Rachael and Daniel Klein testified for Stonefield.

1

"Doremus Subdivision and Planned Unit Development Land Use Application" (land use application).  In the land use application, the Doremuses "request[ed] to be awarded 5,750 square feet of *gross* floor area for a new lot," with the house "limited to 4,750 square feet of floor area" plus 1,000 feet of garage and subgrade area.

¶ 4    The Pitkin County Planning and Zoning Commission (the Zoning Commission) set a public hearing to review the land use application (the zoning hearing).  The Doremuses' land planner, Glenn Horn, mailed notices for the zoning hearing to the homeowners and three other neighbors who are not parties to this litigation.  Horn also published the same notice in the Aspen Times Weekly.  And Horn posted public notice signs at the end of the Doremuses' driveway stating the date, time, and purpose of the zoning hearing.  None of the homeowners appeared at the zoning hearing.  The Zoning Commission unanimously recommended that the Pitkin County Board of County Commissioners (the Board) approve the application.

¶ 5    Following the zoning hearing, the Doremuses once again approached the homeowners to request signatures for a second set

of letters supporting the lot split. Steve Schlafer and Jeffrey Montgomery signed the letters on behalf of their respective entities.

¶ 6 The Board set a public hearing to consider the land use application (first Board hearing). Horn once again mailed notices to the homeowners and nonparty neighbors, published the notice in the Aspen Weekly Times, and posted a public notice sign at the end of the Doremuses' driveway. None of the homeowners appeared at the first Board hearing.

¶ 7 After considering the land use application at the first Board hearing, and again during a second reading at a regular meeting one month later, the Board passed Resolution No. 018-2017, which granted the lot split and request for 5,750 square feet of gross floor area on the second lot, subject to compliance with county standards. Resolution No. 018-2017 was recorded in the real estate records one month later.

¶ 8 The Doremuses submitted a final application per county requirements. The Zoning Commission considered the final application at a regular meeting and unanimously recommended approval. The Board then introduced and read the Doremuses' final application at a public hearing (second Board hearing). Again,

Horn had mailed notices of this hearing to the homeowners and nonparty neighbors and published the notice in the Aspen Weekly Times.[2] A few weeks later, the Board held a third public hearing (third Board hearing), at which it conducted a third reading of the final application and adopted it the same day. None of the homeowners appeared at the second or third Board hearing. The Board then passed Resolution No. 141-2018, which constituted the final approval for the Doremuses' requested lot split and request for 5,750 square feet of gross floor area. Resolution No. 141-2018 was recorded in the real estate records one month later.

### B. Trial Court Procedural History

¶ 9 Approximately three years later, the Doremuses offered to sell the second lot to the Montgomerys and Kleins. The homeowners alleged this was the first time they were made aware that the Doremuses had sought and received approval for 5,750 square feet of floor area. The homeowners stated that throughout the application proceedings the Doremuses represented that they

---

[2] The trial court noted that while Horn testified that he included a picture of the public notice sign for the second Board hearing, no such photo was in the file.

intended to build a 2,500 square-foot home on the second lot if the split was successful and that this representation prompted the homeowners' willingness to sign the letters of support.

¶ 10    The homeowners filed a complaint alleging three claims: (1) fraudulent misrepresentation; (2) fraudulent concealment; and (3) unjust enrichment.  The homeowners sought to "permanently enjoin[] [the Doremuses], and any successor-in-interest, from developing the Subdivided Lot to construct any structures currently permitted as a result of the [land use] Application."  In the alternative, the homeowners sought "damages . . . in an amount at least equal to the reduction in value of [the homeowners'] respective properties by reason of [the Doremuses'] ability to develop the Subdivided Lot."

¶ 11    The matter was set for a bench trial.  Eleven days before it was set to begin, the trial court entered an order requesting the parties "initially present evidence concerning notice issues" because it considered that "a threshold issue[] that may be determinative and render evidence on other issues unnecessary."  On the first day of trial, the court noted that it "may well be more efficient for the Plaintiffs who are called to testify to address all the elements of

reasonable reliance when they come up and testify about notice." The parties agreed, and the court allowed the homeowners to testify about both reliance and notice. Following the bench trial, the trial court issued oral findings and conclusions in favor of the Doremuses on all claims.

¶ 12 The trial court followed with a written order memorializing its oral ruling. It found that the homeowners had received the mailed notices of the public hearings, and the Doremuses had both posted and published notices of the public hearings. The court further found that the complaint was a collateral attack on the Board's approval of the Doremuses' application. Based on these factual findings, the trial court concluded:

- The homeowners' claims failed for lack of subject matter jurisdiction because C.R.C.P. 106(a)(4) "provide[d] the exclusive remedy under Colorado law for challenging quasi-judicial decisions of a local government."

- The homeowners could not prevail on the justifiable reliance element of their fraudulent representation and fraudulent concealment claims.

6

- Stonefield's claims were barred because they had constructive notice of the land application approval.[3]

- The homeowners could not prevail on their unjust enrichment claim because they could not prove that it was unjust for the Doremuses to retain the benefit of the approvals.

¶ 13    This appeal followed.

## II.    Jurisdiction

¶ 14    The homeowners argue the trial court erred by ruling that it did not have subject matter jurisdiction over the homeowners' claims.  We agree in part but find the trial court's error was harmless.

### A.    Applicable Law and Standard of Review

¶ 15    C.R.C.P 106(a)(4) provides the exclusive remedy for challenging quasi-judicial decisions of a local government.  *Freed v. Bonfire Ent. LLC*, 2024 COA 65, ¶ 12.  Quasi-judicial actions involve "the determination of the rights, duties, or obligations of specific

---

[3] The previous owners, Kurt and Ann Hall, conveyed the Stonefield Lot to Stonefield on November 12, 2020, approximately two years after the passage of Resolution No. 141-2018.

7

individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question." *Farmers Water Dev. Co. v. Colo. Water Conservation Bd.*, 2015 CO 21, ¶ 18 (quoting *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 625 (Colo. 1988)). Rule 106(a)(4) provides an avenue for reviewing the actions of governmental bodies or officers — not the actions of private parties. *Freed*, ¶ 14. A complaint seeking review under this rule shall be filed in the district court within twenty-eight days of the final decision of the governmental body. C.R.C.P. 106(b).

¶ 16 "We review de novo a [trial] court's determination that it lacks subject matter jurisdiction." *Freed*, ¶ 13. And "[b]ecause the [trial] court exercises no factfinding authority in [Rule 106(a)(4)] cases," we are not bound by any of the lower court's determinations. *Carney v. Civ. Serv. Comm'n*, 30 P.3d 861, 863 (Colo. App. 2001).

B. Analysis

¶ 17 The homeowners contend the trial court erred by finding that their claims were a collateral attack on the Board's decision and therefore subject to the Rule 106(b) deadline.

¶ 18    The trial court's determination that the homeowners' claims constituted a collateral attack on the Board's action stemmed from the homeowners' request for injunctive relief, wherein the homeowners asked the trial court to "vacat[e] the approval issued by the [Board]." The trial court noted that this proposed remedy "results in the Doremuses having to go back to the Board to reargue the issue with the participation of the [homeowners]" and that this "would be the typical relief granted in the event that the Court were to overturn [the Board's] decision under Rule 106(a)(4)."

¶ 19    The homeowners argue that the trial court misinterpreted their requested relief. The homeowners contend that rather than "vacat[ing] the approval issued by the [Board]," they instead "sought to enjoin the Doremuses from developing the Subdivided Lot in accordance with the land use approvals that were obtained by fraud." According to the record, this is one part of their requested relief as the homeowners asked for "a restriction in covenant that would limit the development to what Andrew Doremus's misrepresentations were." But, notably, the homeowners confirmed that the primary relief they sought involved "redo[ing] the process in front of the governmental authority of jurisdiction." Therefore, the

trial court was correct in concluding that the requested relief involved vacating the Board's approval of the Doremuses' land use application.

¶ 20     And we agree that based on the injunctive relief sought, these were requests for review of a quasi-judicial function of the Board. Granting the Doremuses' land use application required the Board to determine the rights and duties of particular individuals in a specific factual context, which they then considered when applying the existing legal framework to their zoning request. *See Freed*, ¶ 17. "These are the hallmarks of a quasi-judicial function of a governmental body," and any challenge specific to the land use application and zoning request should have been raised within twenty-eight days of the Board's final approval. *Id.* at ¶¶ 17-18. Thus, to the extent the homeowners' complaint sought to force a return to the Board, the trial court did not err by rejecting the claim as an untimely challenge under Rule 106(a)(4).

¶ 21     However, the homeowners additionally argue, and we agree, that the monetary request for relief against the Doremuses falls outside of the boundaries of a Rule 106(a)(4) review. *See, e.g., Sundheim v. Bd. of Cnty. Comm'rs*, 904 P.2d 1337, 1345 (Colo. App.

1995) (holding a plaintiff's claim for monetary damages under 42 U.S.C. § 1983 was distinct from any Rule 106(a)(4) claim), *aff'd*, 926 P.2d 545 (Colo. 1996).  Nevertheless, any error in considering the homeowners' request for monetary damages to be barred by a lack of jurisdiction was harmless because the trial court went on to reach the merits of the claims.

### III.    Justifiable Reliance

¶ 22     The homeowners contend the trial court erred when it found they could not justifiably rely on the Doremuses' representation of their lot size.  We disagree.

#### A.    Standard of Review and Applicable Law

¶ 23     The parties disagree as to the applicable standard of review. The homeowners contend that this "issue challenges the trial court's legal conclusions on justifiable reliance, and, therefore the review is de novo."  The Doremuses argue that reliance on a misrepresentation is a question of fact that we review for clear error, and the factual findings are binding if they are supported by the record.  We agree with the Doremuses.  *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382-83 (Colo. 1994).

¶ 24    "Common to both fraudulent concealment and fraudulent misrepresentation is the element of reliance." *Nielson v. Scott*, 53 P.3d 777, 780 (Colo. App. 2002).  In the former scenario, reliance lies in the plaintiff's assumption that the concealed fact does not exist.  *Id.*; *see Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 56.  The latter requires a showing that the "defendant made a fraudulent misrepresentation of material fact [that] the plaintiff relied on."  *Barnes v. State Farm Mut. Auto. Ins. Co.*, 2021 COA 89, ¶ 28.

¶ 25    "A party's reliance on a purported misrepresentation is not justified when the party is aware of or on inquiry notice of the falsity of the representation."  *Rocky Mountain Expl., Inc.*, ¶ 53.  Put another way, "[i]f the plaintiff has access to information that was *equally available* to both parties and would have led to discovery of the true facts, the plaintiff has no right to rely upon the misrepresentation."  *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. App. 2000) (emphasis added).

## B. Analysis

### 1. The Homeowners Had Equal Access to the Truth

¶ 26 The homeowners argue the trial court erred when it found that they had equal access to the truth — namely, that the Doremuses sought approval for a 5,750 square foot area as opposed to a 2,500 square foot area.[4]

¶ 27 The homeowners attempt to distinguish the facts underlying this case from those in *M.D.C./Wood* and *Neilson*. They contend that the parties in those cases had equal access to information because they were "actually 'given' the correct information" and that access to a public file is not categorically the same.

¶ 28 Notably, the trial court found that the Doremuses' lot-size information was given to the homeowners, and thus became equally available, when they received the mailed notices for the public hearings. Specifically, the court noted that the first Board hearing notice explicitly detailed that the Doremuses were pursuing "a growth management allotment of 4,750 square feet of floor area for

---

[4] Notably, throughout the homeowners' lengthy recitation of the factual background in their briefing, they never acknowledge or discuss the factual findings made by the trial court.

a single-family residence on a newly subdivided lot." And despite the homeowners' claims that they never received the notice, the court found otherwise after hearing testimony from Horn and the nonparty neighbors. Horn testified that he mailed a notice of each hearing to the individual homeowners. Horn also testified that after suit was filed, he checked the county records to see if any notices had been returned as undeliverable, and the only letter that was returned had been sent to a neighbor who had moved away.[5] Finally, the nonparty neighbors all confirmed their receipt of the mailed notices for the relevant hearings, which the court considered to be "the most credible [testimony]," given "none of [them] have a horse in this race."

¶ 29 Because there is record support for the trial court's finding, we cannot disturb it. *See M.D.C./Wood, Inc.*, 866 P.2d at 1382. Further, in light of the court's finding, we agree that the homeowners' actual notice of the requested square footage of floor

---

[5] That neighbor is not party to this appeal.

area means that they failed to demonstrate justifiable reliance. *See Rocky Mountain Expl., Inc.*, ¶ 53.[6]

## 2. The Trial Court Did Not Abuse its Discretion in Bifurcating the Trial

¶ 30 The homeowners additionally contend the trial court erred by bifurcating the trial and limiting the bench trial to the issue of notice. In support of this claim, the homeowners merely state that the trial court "cut short evidence it deemed not relevant to notice" and that this limitation meant the trial court "failed to consider all of the circumstances as required and erred as a matter of law."

¶ 31 We review a trial court's bifurcation of a trial for an abuse of discretion. *Martin v. Minnard*, 862 P.2d 1014, 1016 (Colo. App. 1993). "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law." *Black v. Black*, 2020 COA 64M, ¶ 118.

---

[6] The homeowners' reliance on the pattern jury instruction regarding the duty to investigate, *see* CJI-Civ. 19:10 (2025), is unavailing. Because the trial court found, with record support, that they had been informed of the proposed square footage in the Doremuses' request and, thus, had the "'inquiry notice' that [the jury instruction] embodies," *id.* cmt. 3, the court's conclusion is not contrary to the legal principles underlying that jury instruction.

¶ 32    The homeowners do not explain how the trial court's conduct of the trial or its evidentiary rulings constituted an abuse of discretion.  *See Murray v. Just In Case Bus. Lighthouse, LLC*, 2016 CO 47M, ¶ 16.  And the trial court ultimately allowed the homeowners to testify about reasonable reliance as well as notice during the bench trial.  Thus, the trial court considered evidence beyond what was relevant to notice, and to the extent the homeowners contend otherwise, we find their assertion is undeveloped and decline to address it.  *See Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 41.

¶ 33    In any event, because the court's finding that the homeowners had notice effectively precludes the homeowners' claims, we cannot see how any error in focusing the hearing on this threshold issue prejudiced the homeowners.  *See* C.R.C.P. 61 (errors that do not affect the substantial rights of the parties are to be disregarded).

## IV.    Constructive Notice

¶ 34    The homeowners contend the trial court erred by finding Stonefield had constructive notice of the approval of the Doremuses' land use application.  We disagree.

16

A.     Standard of Review and Applicable Law

¶ 35     We review a trial court's legal conclusions de novo.  *Tisch v. Tisch*, 2019 COA 41, ¶ 24.  "Constructive notice is, for all practical purposes, record notice."  *Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003).  "When a party properly records his interest in property with the appropriate clerk and recorder, he constructively notifies 'all the world' as to his claim."  *Id.*

B.     Analysis

¶ 36     Stonefield acquired the property adjacent to the Doremuses' lot approximately two years after the Doremuses received approval for their land use application.  And the homeowners do not argue that the Doremuses improperly recorded the approval of their land use application through the recordation of Resolutions Nos. 018-2017 and 141-2018.  Instead, the homeowners argue that "Stonefield cannot be charged with constructive notice of a land use approval that was not recorded in Stonefield's chain of title."

¶ 37     In essence, the homeowners are asking us to conclude that the purchaser of any property lying next to land that is already zoned, but undeveloped, should be allowed to sue the owner of the undeveloped property despite the purchaser's failure to inquire

about the zoning status. This would contravene Colorado case law, which states that "[c]onstructive notice occurs when a party 'abstains from inquiry when inquiry ought to be made' because '[w]illful ignorance is equivalent, in law, to actual knowledge.'" *Macasero v. ENT Credit Union*, 2023 COA 40, ¶ 20 (quoting *Mackey v. Fullerton*, 4 P. 1198, 1200 (Colo. 1884)). Stonefield could have looked at the county records for the relevant resolutions, which detailed that the Doremuses' lot had received approval for 5,750 square feet of gross floor area. Its decision not to inquire amounted to constructive notice, and the trial court correctly concluded that Stonefield's claims were barred because of that notice.

## V. Unjust Enrichment

¶ 38 The homeowners contend the trial court erred by dismissing their unjust enrichment claim. We disagree.

### A. Standard of Review and Applicable Law

¶ 39 We review de novo whether the trial court has applied the appropriate test to determine the existence of unjust enrichment. *Redd Iron, Inc. v. Int'l Sales & Servs. Corp.*, 200 P.3d 1133, 1136 (Colo. App. 2008). But "where a ruling on unjust enrichment is based on facts developed at trial, an appellate court affords

deference to the trial court's discretion to fashion equitable remedies, and it reviews for abuse of discretion." *Id.*

¶ 40 To succeed on an unjust enrichment claim, a party "must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis v. Lewis,* 189 P.3d 1134, 1141 (Colo. 2008).

## B. Analysis

¶ 41 The homeowners contend that we should review the trial court's unjust enrichment decision de novo. But the homeowners' challenges are rooted in the trial court's factual findings. The trial court applied the correct legal standard to the unjust enrichment claim. *See id.* Therefore, we will review the trial court's denial of the requested relief for an abuse of discretion. *See id.*

¶ 42 The trial court assumed without deciding that the homeowners could establish that the Doremuses received a benefit at their expense. Even so, the court determined that the homeowners failed to meet the third prong "because the circumstances do not make it unjust for the [Doremuses] to retain the benefit of the approvals without compensation to the

[homeowners]." The court's conclusion hinged on its factual findings that the homeowners "had notice of the public proceeding" and "had the ability to participate in the County's process and elected not to." As previously noted, *supra* Part III.B, the court's findings were based on the testimony and evidence presented at the bench trial, wherein everyone except the interested homeowners recollected sending or receiving the relevant notices. Because we must defer to the trial court's unjust enrichment decision, *see Redd Iron, Inc.*, 200 P.3d at 1136, we cannot say that it abused its discretion in concluding that the notice afforded to the homeowners, and their choice not to attend and object to the Doremuses land use application during the county proceedings, could then make the Doremuses' success in the proceedings "unjust" if retained.

## VI.    Disposition

¶ 43    The judgment is affirmed.

JUDGE MOULTRIE and JUDGE TAUBMAN concur.