## No. 17,900.

## FRANK H. WEICK, ADMINISTRATOR, ETC. v. RICKENBAUGH CADILLAC COMPANY.

(303 P. [2d] 685)

Decided October 22, 1956.   Rehearing denied December 3, 1956.

Mr. ANTHONY F. ZARLENGO, Mr. EDWARD E. PRINGLE, for plaintiff in error.

Messrs. HOLME, ROBERTS, MORE and OWEN, Mr. ROBERT E. MORE, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error was the administrator of the estate of one McClure. He was plaintiff in the trial court and we will hereinafter refer to him as plaintiff. We will refer to defendant in error as the company.

The action was brought to recover commissions which plaintiff contended McClure had earned while employed as sales manager of the company prior to his death which occurred September 29, 1950. It is admitted by the pleadings that the company tendered plaintiff the sum of $6,023.50 in full settlement of the claim, which sum would pay all commissions due deceased on automobiles sold and delivered prior to September 30, 1950. Plaintiff rejected the tender and contends that the company owes the estate of deceased a commission on the sale of all cars on which orders were taken before September 30, 1950, even though the orders were finally consummated and the cars delivered after McClure's death.

At the close of plaintiff's case the trial court granted a motion made by counsel for the company and entered judgment only for the amount the company admitted to be due McClure, thus holding that the plaintiff had not made out a prima facie case which would justify a recovery of commissions for cars ordered before McClure's death but delivered thereafter. Plaintiff, seeking reversal of the judgment, brings the cause to this court for review by writ of error.

The first point contained in the Summary of Argument of plaintiff is as follows:

"The Court erred in holding that on the basis of plaintiff's evidence, he had not made a prima facie case

entitling him to commissions for cars on which orders were taken before September 30, 1950, and which cars were delivered after his death. Plaintiff's decedent earned his commission when a binding contract for the sale of an automobile was entered into between the defendant and prospective purchaser, and the fact that the time of payment of the commission was postponed until delivery of the car could not work a forfeiture of his commission on cars when delivered because he died before payment became due."

Exhibit A which was received in evidence was the printed form used by McClure and the salesmen working under him, and was signed by the purchaser of the car. It contained blank spaces under appropriate printed headings adaptable for any type of automobile purchase. In bold face type were the words "This Order is not Binding Until Accepted by Dealer." A deposit always was required from a purchaser upon execution of an order by him. The printed form provided, among other things, that the purchaser could cancel the agreement if the price of the car were increased between the date of the agreement and the date of delivery, and, further, if the used car traded in was not delivered to the dealer until the delivery of the new car, the used car should be reappraised, and if the reappraised price were lower than the original allowance, the purchaser might, at his option, cancel the agreement. The agreement further provided that on failure or refusal of the purchaser to complete said purchase for any reason other than cancellation "the cash deposit may be retained as liquidated damages."

It is admitted that the total amount of sales on which orders were taken prior to September 30, 1950, in which deliveries of the cars were made after that date, was $257,650.43; that commissions amounting to $15,370.23 were payable on account of said sales; and that 40% of the latter sum would have been due McClure if delivery of the cars had been made in his lifetime.

Questions to be Determined.

First: *Did the trial court err in holding that on the basis of plaintiff's evidence he had not made a prima facie case entitling him to commissions for cars on which orders were taken before the death of McClure and the cars were delivered after his death?*

This question is answered in the affirmative. Two witnesses were called by plaintiff. Eva Milburn, office manager of the company, testified that she was in charge of the company's books; that McClure was employed as sales manager of the company for many years; that 6% of the sale price of cars was divided among three salesmen and that McClure received 40% of this amount as his commission; that the trade-in value of a used car was deducted from the price upon which the commission was computed; that commissions of the same amount were paid on the sale of used cars; that Exhibit A was the form of contract used by the company in taking orders for the purchase of cars; that McClure worked on a strictly commission basis and had a drawing account against earned commissions; that the accounting procedure was to take the sales from the car invoices and to figure the salesmen's commissions at 6% of the price of the car as set forth on the invoice without including the used car; that commissions were paid on the 15th day of the month following "the last month of each quarter"; that the several commission accounts were credited once each month with amounts earned; and that the invoice was given "usually the day of the sale."

From the testimony of Herbert P. Schumann, a certified public accountant, it is clear that had McClure lived he would have been entitled to receive 40% of $15,370.23 for commissions due on sales of automobiles for which a contract of purchase, or order, had been signed prior to his death. We believe that under this evidence a prima facie case was established even though delivery of the cars was not made until after McClure died.

The basic error lies in the failure of the trial

court to recognize the distinction between the time when a commission is earned and the time when it may become due and payable. *Dibble v. Dimick,* 143 N.Y. 549, 38 N.E. 724, was an action by a salesman for commissions on goods delivered after his discharge, the court in ruling recognized the distinction which we say the trial court failed to recognize in the case at bar. Judge O'Brien, speaking for the court there, said:

"The referee allowed the plaintiff commissions on goods *ordered before, but not delivered until after, his discharge. There was no error in this ruling. The services were rendered when the plaintiff solicited and obtained the orders for the sale of the goods, though the commissions might not be due or payable until the goods were actually delivered; but it was not necessary that the delivery should be made during the plaintiff's employment.* The discharge of the plaintiff could not affect his right to compensation for services rendered up to that time." (Emphasis supplied.)

*Sackett v. Centaur Motor Co.,* 189 Ill. App. 372, was a case in which plaintiff was hired as sales manager of defendant company, his commission to be one per cent (1%) "of the gross sales emanating through his office." Plaintiff was discharged and then claimed commissions on cars delivered after his discharge on the basis of orders arranged by him before his discharge, which the court held were only options. The court held plaintiff was entitled to the commissions, stating, "If the alleged contracts were nothing more than arrangements, when an arrangement with a prospective purchaser ripens into a sale, it gives the right to the agent to a commission for the reason that the agent's efforts are the efficient cause of the sale."

In the case at bar the cars were all sold on orders secured in the lifetime of deceased, and all transactions ripened into completed sales. The purchase order executed in each case was an enforceable contract between the purchaser and the company. The only way the

288

purchaser could get out of this contract was by the happening of two conditions: (1) subsequent raising of the price of the new car between the date of the order and the date of delivery; of (2) changing the appraised price of the car being traded in — and both of these were in the control of the defendant company and not in the control of the purchaser.

█ In reading the trial court's opinion in the instant case, it becomes abundantly clear that the court was adopting the position that, unless there is an express agreement that commission is earned when an order is taken, the salesman is not entitled to it if he is not employed when delivery is made of the item sold and payment received for it. The rule is otherwise. *Atkinson v. New Britain Machine Co.*, 154 F. 2d 895, 901, puts the rule this way:

"We are of the view that *unless there is an agreement clearly providing to the contrary, a person selling on a commission basis is entitled to commission when a sale is made, irrespective of when shipment takes place.* 'In the case of a salesman working on a commission basis, it is reasonable to assume that his compensation has been earned when he has procured the customer's orders although he does not complete his term of employment.' " (Emphasis supplied.)

It was, therefore, the duty of defendant to come forth with proof that the express agreement of the parties was that the commission was not earned until delivery was made. The court could not supply that proof by conjecture or guess. Nor did the testimony of Mrs. Milburn relating to accounting practices of defendant company supply that proof. Her testimony was that commissions were paid quarterly, and that the account was credited once a month from the invoices which were given on the day of the sale. It is to be noted that accounts were not credited on the *day of the sale,* but once a month. It was an accounting practice of the office that she was testifying to here and not the agree-

ment of the parties as to when commissions were earned.

*Second: Did the complaint of plaintiff state a claim against the company which was supported by evidence sufficient to establish a prima facie case?*

This question is answered in the affirmative. It is strenuously agrued by counsel for the company that plaintiff's complaint failed to state "a cause of action" and that the opening statement of counsel for plaintiff failed to contain facts sufficient to constitute a "cause of action."

■ Rule 8 (a) R.C.P. Colo., provides that a complaint shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief; * * *." The technical theory of the old cause of action as it existed under the common law, and to a lesser extent under the Code of Civil Procedure, can no longer be urged to defeat a litigation if **upon any theory** of law the claim stated entitles the pleader to relief. Under the Rules of Civil Procedure it no longer is necessary to elect at the peril of the pleader a particular theory or "cause of action." In most cases it is sufficient if the pleader clearly identifies the transactions which form the basis of the claim for relief, and if upon any theory of the law relief is warranted by the evidence offered and received in support of the claim, it should not be denied because of the possible selection by counsel of the wrong technical "cause of action." In the case of *Bridges v. Ingram*, 122 Colo. 501, 223 P. (2d) 1051, we treated this subject at some length and our opinion in that case refers to other sections of the Rules of Civil Procedure which are fully applicable here, and no good purpose would be served by lengthening this opinion by duplicating the references there made.

■ It is argued that ultimate facts are not alleged and that the conclusion contained in the complaint to the effect that "on the date of death of the said Harris T. McClure, there was due to him and his estate by the defendant certain commissions * * *" invalidates the

complaint for lack of specific allegations. There is no merit in this contention. Rule 8 (e) (1) contains in part the following pertinent language: "Pleadings otherwise meeting the requirements of these rules shall not be considered objectionable for failure to state ultimate facts, as distinguished from conclusions of law."

The complaint was sufficient to meet the requirements of the applicable rules, and the evidence admitted was sufficient to establish a prima facie case. The judgment is reversed and the cause remanded for presentation of evidence on behalf of defendant company, or such further proceedings as counsel may determine.