No. 21124.

BARBARA FLEMMING, A MINOR, ETC. *v.*
THE COLORADO STATE BOARD OF EDUCATION, ETC., ET AL.
(400 P.2d 932)

Decided April 12, 1965.

46

COLE and MALEY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN W. PATTERSON, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS writ of error involves an interpretation of the statutes and rules and regulations of the State Board of Education relating to special educational programs for physically handicapped children (C.R.S. '53, 123-22-1, et seq.)

The parties are aligned here as they were in the trial court. We will refer to plaintiff in error as plaintiff and to the defendants in error collectively as defendant or by name.

Plaintiff's action in the nature of mandamus was brought under Rule 106, R.C.P. Colo. Plaintiff alleged that she is a physically handicapped child within the terms and conditions of C.R.S. '53, 123-22-2, and entitled to some of the home tutoring service as provided by C.R.S. '53, 123-22-3. She asserted that she was instructed by the Dean of Girls of Alameda Junior High School of Jefferson County, Colorado: that her application for the tutoring and supplementary teaching services should be accompanied by a letter from her doctor; that she attached to her application such a letter written by Alvin Stjernholm, D.C., a doctor of chiropractic, who was duly licensed to practice his profession in the State of Colorado. She avers that her application and accompanying documents, including the letter from Dr. Stjernholm, were forwarded to the State Board of Education; that her application was denied; that she was not recommended for such tutoring or services because of the rules and regulations of the State Board of Education and of the Colorado State Department of Education which provide that the recommendation for such services must be made by a "physician licensed to practice medicine in Colorado." It was not disputed that Dr. Stjernholm, being a chiropractor, is not qualified as a physician to practice medicine in Colorado.

In the prayer of her complaint plaintiff prayed that defendants be ordered to furnish her "special home tu-

toring and supplementary teaching services as provided in the statutes." The rule to show cause was issued to the State Board and a hearing was held. At the conclusion of the evidence, the defendants moved for dismissal of the complaint on the ground that the defendants were not the proper parties to the action. The motion was granted and judgment for dismissal was entered against plaintiff, to which she prosecutes this writ of error.

The reason for dismissal is contained in the following court order:

"1953 C.R.S., 123-22-5 through 123-22-15 clearly indicate that if the relief sought by the plaintiff in this court were ordered against the defendants, the defendants could not comply with such order. The defendant Colorado State Board of Education is merely an approving agency of the special programs for physically handicapped children which may be provided by C.R.S. 123-22-5. Section 123-22-6 provides that once a school district has been established, the Board of Education may approve the application of the student, and that after such approval such student may be recommended for enrollment. However, 123-22-7 is dispositive of the delineation of power as raised by this decision. It specifically provides, in part:

" 'Final decision upon the enrollment of any physically handicapped or educable mentally handicapped child in a special education program shall rest with the board of education of the district * * *'

"Thus, construing the statutes in the light of the obvious intent of the legislature, it is apparent that the defendants are not proper parties to this action.

"There was some testimony here that the individuals who concern themselves with this matter might have varied the requirements of the statute. However, the same is not binding upon the (State) Board of Education."

We hold that the trial court was in error. The plaintiff stated a cause of action against defendants. The testi-

mony of the Commissioner of Education for the State and of the Supervisor of Special Education, Jefferson County Schools, disclosed that the defendants were responsible for her application being denied

The trial court reasoned thusly: The statute leaves to the district school board the "final decision" as to the enrollment of the child; the plaintiff sought relief to compel the State Board of Education to provide her home tutoring which is not within the State Board to order or grant; therefore the plaintiff is not entitled to the claim against the State Board because the relief sought was to compel that body to provide her with home tutoring.

■ This would be true if the test of the meritorious cause of action is to be found in the prayer. We have held, however, that the prayer of a complaint is not the statement of the cause of action, and if the allegations of the complaint state a cause of action or show one entitled to relief, it should be granted regardless of the remedy sought. *Berryman v. Berryman,* 115 Colo. 281, 172 P.2d 446; *Bridges v. Ingram,* 122 Colo. 501, 223 P.2d 1051; *Weick v. Rickenbaugh Co.,* 134 Colo. 283, 303 P.2d 685.

■ The evidence at the hearing in response to the show cause order was clear and undisputed. Plaintiff was entitled to relief against the State Board because *it* had used the *rule-making authority* granted to it in the act to place a road block in the process of considering *the child's application* for home tutoring.

An examination of the statute involved, rather than an examination of the prayer of the complaint, will reveal the error committed by the court and the fallacy of its ruling.

■ C.R.S. '53, 123-22-1, is a declaration of legislative purpose whereby the State has committed itself "to provide the *means* of educating" those children who come under the definition of being handicapped and homebound as set forth in the article. C.R.S. '53, 123-22-3

declares the services to be provided by the local board by reason of the money to be supplied by the state. In C.R.S. '53, 123-22-4 the *State Board of Education* is made responsible for administration of the program; it is required to maintain sufficient personnel to supervise it. It is significantly provided that the State Board of Education shall prescribe reasonable *rules* and *regulations* covering procedures to be followed by the *school districts* electing to establish the special education program.

■ Then follows C.R.S. '53, 123-22-6, which provides: *"Application for enrollment.* — When any such special education program shall have been established by any school district and shall have been determined by the department of education to be properly serviced, staffed and equipped, the parent or guardian, of any physically handicapped or educable mentally handicapped child residing in such district or districts, shall make application upon prescribed form for the enrollment of such child to the local superintendent of schools, where one is available, or to the county superintendent of schools. Such child shall thereupon undergo physical and psychological examination by state accredited personnel for the purpose of determining whether or not he is capable of receiving benefit from participation in such a special education program, and if determined eligible and capable of receiving the indicated benefits, and upon approval of application by the board of education, shall thereupon be recommended for enrollment."

Various affirmative things are to be done under section 6 above quoted first by the applicant and then by the State Board of Education. The plaintiff completed those things required of her under the statute and under the rules, but the affirmative action by the State Board requiring that it give its approval and make its recommendation was not done. The reason given was that her application did not conform to rule 2 c., Ch. II, 1962, Special Education Manual No. 1 on "Administrative Procedures For The Special Education Program." Therein is

contained the provision that "A physician licensed to practice medicine in Colorado shall certify * * *" the required certificate. Absent the rule, the plaintiff's application could be processed.

■ Whether plaintiff eventually receives the home tutoring and special teaching services is not pertinent to the suit against the defendants. The section of the statute placing in the local school district the final decision cannot come into operation until the application has been processed and approved by the State Department of Education. It must first recommend the enrollment. Thus plaintiff did not get to the ultimate place where the Jefferson School authorities could pass on her application. The State Board should not be permitted to hide behind the skirts of section 7 because the State Board, through its rules, has cut the pattern and sewn the garment.

The real inquiry presented to the court is the validity of the rule and regulation of the State Board declaring that only a physician, qualified to practice medicine in Colorado, fits the definition in the statute of "state accredited personnel."

■■ The State Board of Education cannot by the rule-making power granted to it in the statute construe the terms "state accredited personnel" in such a narrow and restrictive manner. The legislative statement is quite broad, and we believe was intentionally made so as to cover all of those persons who have been accredited by State laws to practice the healing arts in Colorado. Chiropractors are licensed and regulated by the State, 1960 Perm. Supp. C.R.S., section 23-2-1, et seq. (now C.R.S. 1963, 23-1-1 et seq.). Through similar statutes medical doctors and osteopathic physicians are accredited. Chiropractic is defined in 1960 Perm. Supp. C.R.S. section 23-2-2 (now C.R.S. 1963, 23-1-2) as among the healing arts, and it is stated in the statute that the authorized practice includes diagnosing, analyzing and treating human ailments. Chiropractors are subject to

examination in the basic sciences in the same manner and to the same extent as are all others — medical doctors and osteopaths — in the healing arts (C.R.S. '53, 91-5-2). We do not sanction the board rule which excludes other healing professions as not being covered by the language "state accredited personnel." The rule is contrary to and inconsistent with the statute and beyond the power of the board to promulgate. *State Board v. Champion,* 141 Colo. 375, 348 P.2d 256.

The relief then to which the plaintiff is entitled, regardless of her prayer against the defendants, can be and should be granted by the judiciary. The relief she sought was to break the shackles which the State Board has wound around the effective administration of the act at the district level by reason of the rule here under attack.

The judgment is reversed and the cause is remanded with directions to the trial court to enter judgment declaring the State Board rule null and void and to enter an order to the State Board directing it to complete the processing of plaintiff's application.

MR. JUSTICE SUTTON, MR. JUSTICE MCWILLIAMS and MR. JUSTICE SCHAUER dissent.

MR. JUSTICE SUTTON dissenting:

I dissent from the majority opinion. I do not agree when it states that "The real inquiry presented to the court is the validity of the rule and regulation of the State Board declaring that only a physician, qualified to practice medicine in Colorado, fits the definition in the statute of 'state accredited personnel.'" That is only one of the issues presented and should not be determined unless the primary issue, discussed infra, is held to be favorable to plaintiff.

In my view, a decision based on the premise of the majority is an attempted short-cut, not proper or even

properly before us, under the pleadings or evidence presented.

Nor do I agree, as stated, "that the defendants were responsible for her application being denied"; nor, that "The Section of the statute placing in the local school district the final decision cannot come into operation until the application has been processed and approved by the State Department of Education. It must first recommend the enrollment."

The statute (C.R.S. '53, 123-22-7), as correctly interpreted by the trial court, places *the final decision* as to whether a handicapped child should be enrolled in a special program *with the board of education of the district.* No showing was made in the trial court that the local board had formally refused to enroll plaintiff; and, no statute or rule is cited by counsel on this writ of error which indicates that plaintiff could not be enrolled at the local level. Nor, was the local board made a party as it should have been to have those issues decided.

The issue of reimbursement, which is really why these defendants could be joined in a proper action, has not yet arisen; nor would it, if the local board were to act unfavorably on plaintiff's petition. And, this is true regardless of whether and when these defendants process plaintiff's application.

I consider the local board the proper party defendant in this proceeding and would affirm the action of the trial court in dismissing the complaint.

MR. JUSTICE McWILLIAMS dissenting:

The only issue posed by this writ of error is a determination as to the construction or interpretation to be given a statute, namely C.R.S. '53, 123-22-1, et seq. In my view the majority of this Court have misconstrued and misinterpreted the statute here in question, the statute being couched in what is to me quite plain and readily understandable English. It is for this reason that I dis-

sent, and I shall now attempt to demonstrate my thinking in this regard.

C.R.S. '53, 123-22-1 and 2 indicate a legislative intent to provide means for educating those children who are so physically and mentally handicapped as to make it impractical or impossible for them to participate in or benefit from regular classroom programs. Section 4 of this article concerns itself with the administration of the program and provides, *inter alia,* that the State Board of Education shall prescribe "reasonable rules and regulations covering procedures to be followed by those districts electing to establish special educational programs."

Section 6 of this same article concerns itself with the enrollment of a child in this special educational program. It states, *inter alia,* that the parent or guardian of any such handicapped child shall make application for this special training "upon prescribed form." In this regard the State Board by rule has decreed that the prescribed form of application shall include a recommendation or certification by a "physician licensed to practice medicine in the State." As is stated in the majority opinion, the application in the instant case did not comply with this rule.

Continuing then with my analysis of this statute, it is noted and emphasized that under the statute the filing of a proper application does not in and of itself guarantee enrollment of the applicant in this special course of study. There are several other requirements which must be met before there may be an actual enrollment. In this connection, section 6, above referred to, goes on to state that one such requirement is that once the application is made the applicant "shall thereupon undergo physical and psychological examination by *state accredited personnel* for the purpose of determining whether or not he is capable of receiving benefit from participation in such a special education program . . ." (Emphasis supplied.)

It is the contention of the plaintiff in error that the

rule of the State Board that the application shall be accompanied by a recommendation from a physician licensed to practice medicine in this State is invalid, not because it is an unreasonable rule or regulation, but because the rule is somehow in conflict with the statutory requirement that the physical and psychological examination (which is to be made after the application is filed) must be conducted by "state accredited personnel." To me, this contention is based on an obvious misunderstanding of the statute under consideration and results from an improper commingling and scrambling of the statutory requirement relating to the physical and psychological examination, which is to be made *after* the application has been filed, and the rule of the State Board as to the prescribed form of the application. A fortiori, the majority of this Court then fall into the same error when they uphold this contention and in so doing state that the "real inquiry presented to the Court is the validity of the rule and regulation of the State Board declaring that only a physician licensed to practice medicine in Colorado fits the definition in the statute of 'state accredited personnel.'"

Also, in my view the majority have assigned a completely unwarranted interpretation to the phrase "state accredited personnel," which simply reinforces my definite belief that the requirement of the statute that the physical and psychological examination to be made by "state accredited personnel" *after* an application has been filed is distinct from, and unrelated to, the application itself. In this regard the majority appear to hold that anyone licensed by the State to practice any of the several healing arts is by virtue of the fact that he is so licensed a "state accredited personnel." This to me is a strained and unwarranted interpretation. In my view neither a physician nor a chiropractor who is engaged in the private practice of his profession can be properly classified as "state accredited personnel." Rather, I would

interpret this phrase in the context in which it is used as meaning that the physical and psychological examination is to be made, for example, by a school district's doctor, or psychologist or chiropractor, or if the school district has no such *personnel,* then no doubt such *personnel,* or some of them, would be found at the Colorado General Hospital, for example, or in some other public office. The word "personnel" is defined by Webster's New International Dictionary, Second Edition, unabridged, as "the body of persons employed in some public service, or the Army or Navy, or in a factory, office, airship, etc." To classify a physician or a chiropractor who is engaged in the private practice of his chosen profession as one who is "state accredited personnel" is to give this phrase an unwarranted and unjustified meaning.